# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 24-CR-30061-MGM |
| | ) | |
| DANIEL TOCCI | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Daniel Tocci has pled guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Mr. Tocci accepts responsibility for his conduct and acknowledges the impact of his offenses on the victims.

We ask the Court to impose a sentence of incarceration of time served[1], and 60 months of supervised release, with the first 6 months spent at a Residential Reentry Center. This sentence is permitted by Mr. Tocci's Rule 11(c)(1)(B) plea agreement. We make this recommendation because of the duplicative nature of the enhancements in § 2G2.2 that skyrocket the guideline range. As discussed below, if the Court were to set aside the duplicative enhancements, the guideline range for this offense would be 18-24 months.

The sentence we propose represents a significant variance, but one that can be supported by the record, particularly for a first-time offender who did not engage in any objectively dangerous behaviors related to child pornography.

Our proposed sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is "sufficient, but not greater than necessary" to serve the purposes of sentencing. *United States v. Kimbrough*, 128 S. Ct. 558 (2007); *United States v. Booker*, 125 S.

---

[1] Mr. Tocci was taken into custody during his Rule 11 Hearing on September 16, 2025, making a time served sentence equal a little over 6 months.

Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

**History and Characteristics of Mr. Tocci**

*Personal Background*

It is fair to say that Mr. Tocci's life has been defined by two important points – first – his childhood diagnosis of Asperger's Syndrome and the isolation he felt as a result, which complicated his relationships with his siblings and peers and – second – the end of his most significant personal relationship, with his ex-girlfriend Colleen. Both of these events have caused Mr. Tocci to realize that he has a very hard time fitting into the world. He is kind, intelligent, caring and thoughtful, attributes that his friends and family have written extensively about. He is a hard worker who maintained employment during the entire pendency of this case, up to his detention, and he has proven himself to be a reliable neighbor who his community has come to depend on.

Mr. Tocci certainly would have benefitted from the intervention of mental health care. When a person with Asperger's suffers the type of personal tragedy that Mr. Tocci did, with the ending of his relationship with Colleen, they can be woefully ill equipped to work through the pain. This is particularly true for Mr. Tocci, who has spiraled downward for years after the loss, and only now, while relying on mental health care within the Wyatt Detention Center, has found comfort in the diagnosis of Complicated Grief. He has lacked the ability to work through that loss in ways that a neurotypical person may – leaning on friends for emotional support, pursuing a hobby, or trying to date again. Instead, Mr. Tocci lost himself in the distractions available online that ultimately led him to commit this crime and be charged in this case.

2

For years Mr. Tocci has been struggling with the question of – Why? Why did he commit this crime? Why does a young man with a college education and a stable background wind up downloading and viewing child pornography? And, for purposes of sentencing the related question – How do we make sure this crime does not occur again? The letter written by Mr. Tocci for the Court is indicative of his efforts to make sense of this on his own. He has spent considerable time reflecting on his behavior and how he has impacted the victims in this case.

Mr. Tocci was not aware at the time of the offense that viewing child pornography causes lasting harm, regardless of where the photographs originate from. Upon reflecting and reading the victim impact statements, Mr. Tocci now understands that his actions harmed the victims. That is, the harm is an ongoing process – not just an isolated incident. Mr. Tocci has done a lot of reflection on how his actions have impacted others. His parents are devastated; his grandparents and extended family have been let down. They know the nature of the offense. They are embarrassed, they feel deeply ashamed and heartbroken. Mr. Tocci has always maintained a close relationship with his family and to see the way that they have been tested through this process has its own internal repercussions. While these consequences are important to his rehabilitation, Mr. Tocci understands that these emotions pale in comparison to the hurt that the victims in his case continue to experience on a daily basis, knowing that people continue to view these graphic, horrific videos.

Mr. Tocci graduated college at UMass Amherst, has years of work experience in retail services, and at the time he was taken into custody in this case, had been living and working independently. A collateral consequence of this conviction and incarceration will be years of registration with the Sex Offender Registry Board, a felony conviction, and publicity around this case. All of these factors will impede his search for work whenever he is released. Mr. Tocci has

taken the time while incarcerated to write short stories (including a piece focused on a college

student who travels abroad). Mr. Tocci loves music – he plays the electric guitar and blends rock,

Americana/folk, punk and metal. He has performed at open mic events throughout the Valley,

including Lost Towns Brewing in Gilbertville, the Guilded Brick in Holyoke, Wurst Haus in

Northampton, JJ's in Florence, and the Drake in Amherst. He would love to find work that

blends those interests or allows him to pursue playing live.



*Liberal Arts Pop-Up, Northampton, MA August 2024*

*Music Performance at The Drake, Amherst, MA Approximately 2023*

*Mental Health*

Mr. Tocci has made a top priority of care for his mental health during his detention at Wyatt. He has engaged with classes at Wyatt, including the sex offender course offered, Sex Offender Therapy (SOT).

We employed the services of Dr. Caleb Newman-Polk to offer the Court insight into Mr. Tocci's thinking and the impact of his ASD/Asperger's diagnosis. Dr. Newman-Polk opines:

> Mr. Tocci has shown a willingness and desire to learn from his problematic behaviors, especially when those behaviors have resulted in the unintentional harm of others. Empathizing with others is an ability that can increase over time, especially with perseverance and assistance. With support and guidance from loved ones and mental health professionals, it is my opinion that Mr. Tocci can continue to strengthen his perspective-taking abilities. He may also wish to consider recommencing a regimen of prescribed psychiatric medication to help manage his depressive symptoms.
>
> It is worth noting that individuals with ASD are not inherently more likely to engage, or re-engage, in criminal behavior. Mr. Tocci has vocalized an understanding of, and appreciation for, the ways in which the victims have been impacted by his actions, and he has insisted that he will never engage in such behavior again. Mr. Tocci appears dedicated and determined to be a positive, constructive, and safe member of society, and he seems eager to prove himself in that capacity.

Mr. Tocci certainly has the family support and has done the introspective work necessary to assure the Court that his mental health is better treated now that it was at the time of this offense. While the images contained on his devices were graphic, upsetting, and his viewing caused lasting harm to the victims, there is simply no record to support the idea that he would ever offend again. We have provided the Court with memoranda of support from various friends and family, all of whom understand the seriousness of the charges.[2]

---

[2] To help family members share their feelings with the Court, several of the submissions were written by our investigator, Alicia Hutton, who interviewed the family and reviewed the submissions with them.

**The Sentencing Guideline Range**

The guideline range in this case, 78-97 months in the presentence report, and 63-78 months in the plea agreement, does not capture a sentence that satisfies the § 3553(a) factors. This is particularly true given Mr. Tocci's lack of a criminal record and his unambiguous, uncontested acceptance of responsibility.

a. **Critique of Child Pornography Guideline Structure**

The Sentencing Guidelines are not mandatory. *Booker*, 543 U.S. at 260-61. We remind the Court of this fact because the sentence we propose is significantly below the guideline range, and our criticism of § 2G2.2 is an important component of why that is.

The guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 351 (2007). The Court is free to reject a guideline sentence, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Id.* at 350-351. A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (2007) (internal punctuation omitted) (citation omitted). *See also Rodriguez*, 527 F.3d at 231.

Much criticism has been directed at § 2G2.2.[3] The base offense level for possession of child pornography is 18. The offense level is raised 13 points by the imposition of redundant

___

[3] Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (Jan. 1, 2009) at 8-9. The Tenth Circuit has remarked that **"[t]hese modifications do not appear to be based on any sort of empirical data**, and the court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses." *United States v. Regan*, 627 F.3d 1348, 1353 (10th Cir. 2010). Courts have considered that "the Commission's expertise has been set

6

Specific Offense Characteristics. Courts have widely critiqued the child pornography guidelines because of the plethora of "enhancements" that are present in nearly every case. In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), the Second Circuit famously analyzed how the mechanical application of the child pornography guideline was "fundamentally incompatible with § 3553(a)," *id.* at 187, as the "enhancements" are "all but inherent to the crime of conviction," and apply in the majority of cases, routinely resulting "in Guidelines projections near or exceeding the statutory maximum." *Id.* at 186. The child pornography guideline is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *Id.* at 188. The *Dorvee* Court provided a detailed history of the amendments to the child pornography guidelines and how Congressional interference abrogated the Sentencing Commission's historical role of using empirical data regarding past sentencing practices when pegging current guideline offense levels. *Id*. at 184-85. The court concluded that the amendments effected by the PROTECT Act of 2003 "evince a 'blatant' disregard for the Commission and are 'the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress'". *Id*. at 185 (internal citations omitted).  The Third Circuit affirmed a well-below guidelines sentence in a case in which the sentencing judge was highly critical of the guideline. *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010).

The Sixth Circuit has similarly made a distinction between guidelines that are directed by Congress (like much of the child pornography guideline) and guidelines that are chosen by the Commission (like the drug guidelines at issue in *Kimbrough*, which were directly based on

---

aside so often because '**[c]rimes involving the exploitation of children provide fertile ground for grandstanding politicians**.'" *United States v. Kelly*, 868 F.Supp.2d 1202, 1205 (D. N.M. 2012), quoting *United States v. Cunningham*, 680 F.Supp.2d 844, 849 (N. D. Ohio 2010).

congressional policy but not specifically required by Congress). *See United States v. Bistline*, 665 F.3d 758, 763-64 (6th Cir. 2012). With respect to guidelines chosen by the Commission, when the Commission "makes a policy decision for reasons that lie outside its [empirical] expertise," the resulting guideline is "vulnerable on precisely that ground." *Id*.

The First Circuit recognizes and respects the district court's discretion to impose sentences far below the guideline range and has expressed its dissatisfaction with the child pornography sentencing guidelines. In *United States v. Cameron*, 835 F.3d 46 (1st Cir. 2016), Cameron was sentenced to 165 months from a guideline sentencing range of 292 to 365 months, a 43% reduction from the bottom of the sentencing range. For Mr. Tocci, the entirety of the sentence the Government will propose is likely to be much less than the sentence received by Mr. Cameron and much less than the reduction from his guideline range. This highlights the lengths to which Mr. Tocci's case is dissimilar to Cameron's and why the application of these enhancements produces such disparate results. Mr. Tocci, in comparison, is seeking approximately 90% reduction from the bottom of the sentencing range agreed upon in the plea agreement. Unlike Mr. Tocci, Cameron had not freely admitted his crimes, had taken the case to trial, and later fled the state "in violation of his release conditions." *Id.* at 48. When discussing the lower sentence, the First Circuit noted "*Kimbrough* itself states that 'district courts must treat the Guidelines as the starting point and the initial benchmark' for their sentencing decisions, although they can vary from those guidelines based on their 'greater familiarity with the individual case and the individual defendant.'" *Id.* at 50 (citation omitted). The court went on to make clear that "it is a judge's prerogative to 'custom-tailor an appropriate sentence' based on the district court's familiarity with the case and its application of the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* at 52 (quoting *United States v. Flores-Machicote*, 706 F.3d 16, 20 (1st Cir. 2013)).

While the requested variance may seem extreme when discussed in these terms, it is a variance that is well supported by our materials and one which is consistent with the goals of sentencing.

In *United States v. Stone*, 575 F.3d 83 (1st Cir. 2009), the defendant was given a sentence at the bottom of the guideline range. Unlike Mr. Tocci in the instant case, Stone had a criminal history, and the crime included distribution of material to someone he believed to be a minor. Even so, while affirming that the District Court did have discretion to impose the sentence that it did, the First Circuit took pains to criticize the district court for failing to use its *Kimbrough* discretion to disregard § 2G2.2, while emphasizing that "we wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary . . . [F]irst-offender sentences of this duration are usually reserved for crimes of violence and the like." *Id.* at 97.

b. **The Sentencing Commission's Report to Congress**

In February 2013, the Sentencing Commission released a report to Congress criticizing the child pornography guidelines for non-production offenders. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"]. The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.*

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate

among offenders in terms of their culpability." *Id.* at iii.  It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *Id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

This distinction is incredibly important for Mr. Tocci as the origin of his case sets him apart from the heartland of child pornography cases. He was never in an internet chat room, he was not sharing images, he was not engaging in internet chat with individuals for the purpose of meeting in real life, and has never so much as been accused of a contact offense. These are common and exacerbating paths to apprehension of people who wind up charged with Possession of Child Pornography. Mr. Tocci never engaged in any of these high-risk behaviors. The Government will not present any statements attributable to Mr. Tocci that he had a sexual interest in children or a sexual gratification from watching child pornography. Mr. Tocci both in his work with Dr. Newman-Polk and his self-reflection with his coursework at Wyatt has always maintained that truth.

In describing the varying degrees of culpability, the Commission reported that the "typical" child pornography case now involves images depicting "prepubescent children engaging in sexually explicit conduct." *Id.* at 84. Offenders "vary widely in their technological

10

sophistication," with some relatively unsophisticated offenders using widely available peer-to-peer networks to receive or distribute material "in an indiscriminate manner," while others "use their technological expertise to create private and secure trading 'communities' and to evade, and help others evade, detection by law enforcement." *Id.* at viii. Mr. Tocci most closely resembles the unsophisticated offender in a typical case that the Commission writes about; his devices were not encrypted, he was not using a VPN, he did not go to lengths to conceal his devices or secrete the folders within the device.

The Commission reported that approximately one quarter of federal offenders "received child pornography from commercial websites, thereby fostering the commercial markets," and one quarter engaged in "personal distribution" to another individual through bartering or trading of images, also described as a "market." *Id.* at 98-99. There is, however, no social science research available to support the theory that criminal punishments "have affected commercial or non-commercial 'markets' in child pornography since the advent of the Internet and P2P file- sharing." *Id.* at 98.

The Commission reported that some offenders have "non-sexual motivations for viewing child pornography," including "avoidance of stress or dissatisfaction with life." *Id.* at 79.

Mr. Tocci falls squarely within this realm of offenders, having sought out relief from childhood trauma and the loss of his partner. The Court can see that Mr. Tocci had many other types of material on his devices, some disturbing and some that are typical fare of people who spend considerable time online (classical music, poetry, videos and art).[4]

---

[4] While included in the offense conduct at PSR ¶ 10 – the possession of legal, even if upsetting, images should not be a factor in an appropriate sentence in this case.

11

The Commission reported that "not all child pornography offenders are pedophiles or engage in other sex offending." *Id.* at 104.  Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. *Id.* at ix-x, 204-05. However, "the current guideline measures for offender culpability (*e.g.*, for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]."  *Id.* at 204.

The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.* at *see also id.* at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines."  *Id.* at xviii.

The Commission recommends that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (*e.g.*, the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an

offender)," and "to reflect offenders' use of modern computer and Internet technologies." *Id.* at xviii-xix, 322-23.

When a guideline is increased for reasons outside of empirical evidence supporting a change but rather emotion and politics, the Court should set aside that guideline and evaluate the true nature and circumstances of the case, applying the § 3553(a) factors.

**Request for a Variance**

The backdrop of this guideline range makes our request for a variance particularly appropriate. Any request for a variance, whether above or below the guideline range, must be supported by a specific factual finding by the Court at sentencing. We believe that the record we present allows the Court to make such a finding.

In a recent 1st Circuit decision, *United States v. Vazquez-Narvaez*, the Court explained what is necessary to impose a sentence that significantly varies from the guideline range:

While "we have not mandated that a sentencing court follow any particular format in explaining" a "variant sentence," *Flores-Nater*, 62 F.4th at 656, the court must include an elucidation of "why the defendant's case 'differ[s] from the norm' or 'the mine-run of' cases covered by the applicable" guideline, *Perez-Delgado,* 99 F.4th at 21 (alteration in original) (quoting United States v. Serrano-Berríos, 38 F.4th 246, 250 (1st Cir. 2022)). That said, the sentencing court's obligation may be satisfied by an "explanation [that] can be gleaned 'by fair inference' from the sentencing record." *Flores-Nater*, 62 F.4th at 656 (quoting *United States v. Ortiz-Pérez*, 30 F.4th 107, 114 (1st Cir. 2022)).

*United States v. Vazquez-Narvaez*, 134 F.4th 23, at 28 (1st Cir. 2025)

13

The sentencing court in *Vazquez-Narvaez* imposed a time served sentence for the offense of possession of child pornography.[5] That case had a similar guideline range to Mr. Tocci's (51-63months). In the decision, the 1st Circuit remanded the case back to the District Court for resentencing to comply with the requirements described above in finding such a variance. Notably, at resentencing, it appears that the Court imposed the same sentence – time served – supported by an appropriate record.[6]

We also attach a comprehensive list of other cases with similar charges where the Court has chosen to impose a sentence of time served or probation. We share this not to make a direct side by side comparison, for there will always be individual circumstances for each defendant. We share this to demonstrate that a similar sentence for Mr. Tocci would not represent an unusual disposition or one that is outside the heartland of similar cases. Finally, we ask the Court to review the JSIN data, attached to the presentence report, with caution. Within that data, using §2G2.2 as the guidepost, falls individuals charged with receipt of child pornography with the 5-year mandatory minimum. Therefore, the Court imposing sentence in many of the cases included in this data would not have the ability to depart below the 60-month mandatory minimum, even if desired.

**Conclusion**

---

[5] Time served in that matter was 21 days.

[6] US v. Vazquez-Naeves District Court Docket Entry #76: AMENDED JUDGMENT as to Carlos Vazquez-Narvaez (1): IMPR: Time served. SRT: Seven (7) years, which is set to expire on October 5th, 2030. No fine imposed. SMA: $100.00. Restitution imposed. Forfeiture imposed. Count 2, dismissed. Signed by Judge Camille L. Velez-Rive on 7/21/2025. (mep) (Entered: 07/23/2025)

For all of these reasons, we believe the Court has before it a record to support a significant variance to impose a sentence of time served, with 5 years of supervised release to follow.

Respectfully submitted,

DANIEL TOCCI

By his attorney,

/s/ Jessica P. Thrall
Jessica P. Thrall
#670412
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 20, 2026.

/s/ Jessica P. Thrall
Jessica P. Thrall